UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMMIE L. YERKS,

                            Plaintiff,

v.                                                     Case No. 17-CV-172-JPS

DR. HOFTIEZER and J. LABELLE,

                            Defendants.

      Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $4.82. 28 U.S.C. § 1915(b)(4).

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

      A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual

contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions

must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's complaint arises from allegedly inadequate medical care he received while incarcerated at Dodge Correctional Institution. (Docket #1 at 1). On September 18, 2014, Plaintiff was injured by a food cart while working in the prison cafeteria. *Id.* at 1. The cart hit him so hard that his right arm and shoulder "popped." *Id.* He went to see the prison medical staff the next day. *Id.* He was not evaluated by a doctor; instead, a nurse told him to keep ice on his shoulder. *Id.* at 2. Plaintiff was seen by a Dr. Scott Hoftiezer ("Dr. Hoftiezer") a few weeks later, and the doctor opined that the injury was "probably just a sprain." *Id.* He ordered physical therapy. *Id.*

Sometime later, Plaintiff saw Dr. Hoftiezer again and reported that the therapy was not helping his pain. *Id.* Dr. Hoftiezer thereafter ordered an x-ray of the shoulder and prescribed meloxicam for the pain. *Id.* The x-ray, taken in mid-December 2014, came back normal. *Id.*

When Plaintiff saw Dr. Hoftiezer again on January 22, 2015, he claimed that he was still in pain and that he had not been attending physical therapy. *Id.* (It is unclear whether the therapy was not provided during this period or whether Plaintiff simply refused to go.) Plaintiff thereafter started attending physical therapy sessions but his pain persisted. *Id.* During one visit, the physical therapist heard Plaintiff's shoulder "pop" and then asked why Plaintiff had not had an MRI of his shoulder. *Id.* He reported to her that Dr. Hoftiezer told him that an MRI was unnecessary. *Id.*

Nearly a year later, on December 4, 2015, Plaintiff saw an orthopedic specialist, Dr. O'Brien, about his shoulder. *Id.* He suggested that Plaintiff work on strengthening his periscapular muscles, which are located around the shoulder blade, though the precise nature of the strengthening techniques is not described in the complaint. *Id.* Dr. O'Brien recommended a follow-up appointment in three months. *Id.*

Plaintiff saw Dr. O'Brien again on March 4, 2015 and found that Plaintiff's shoulder "was getting worse." *Id.* He ordered an MRI of the right shoulder to evaluate Plaintiff's rotator cuff. *Id.* The MRI, apparently taken on March 23, 2016 (over a year after Dr. O'Brien's order), showed that Plaintiff had a "massive full thickness rotator cuff tear involving the entire supraspinatus and infraspinatus tendons with medical retraction to glenohumeral joint level." *Id.* Dr. Hoftiezer reviewed these test results on April 14, 2016, and ordered a follow-up appointment with another orthopedic specialist, Dr. Grossman, for a treatment recommendation. *Id.*

Dr. Grossman evaluated Plaintiff on May 19, 2016. *Id.* He diagnosed Plaintiff with a "chronic massive rotator cuff tear with retraction, atrophy and

Page 4 of 12

Case 2:17-cv-00172-JPS   Filed 03/15/17   Page 4 of 12   Document 7

adhesive capsulitis." *Id.* Dr. Grossman opined that no surgery could be done to correct the condition because too much time had elapsed. *Id.* Instead, Dr. Grossman recommended intensive inpatient physical therapy for 6–8 weeks. *Id.* Plaintiff saw Dr. Grossman again on July 6, 2016, but it seems that all he did was reiterate his recommendation for physical therapy. *Id.*

Dr. Hoftiezer saw Plaintiff next on July 19, 2016 to discuss Dr. Grossman's recommendations. *Id.* Dr. Hoftiezer presented Plaintiff with three options: (1) intensive physical therapy for a year; (2) manipulation under anesthesia and then a year of physical therapy to try to increase the benefit of the manipulation; or (3) continuation of home exercises and occasional analgesics to maintain the shoulder at its current functional capacity. *Id.* at 2–3. Plaintiff elected for 6–8 weeks of intensive physical therapy as recommended by Dr. Grossman. *Id.* at 3. Dr. Hoftiezer disagreed, however, and ordered Plaintiff to try the third option—home exercises—and then try (at some later, unspecified time) Dr. Grossman's recommended treatment. *Id.* Plaintiff saw Dr. Hoftiezer again on August 31, 2016 and reported continuing pain, but the doctor told Plaintiff to continue with the home exercise regimen for a couple more weeks. *Id.*

Next, on October 5, 2016, Plaintiff saw Dr. Grossman again. *Id.* Plaintiff explained that Dr. Hoftiezer did not follow Dr. Grossman's recommendation. *Id.* They allegedly discussed how Dr. Hoftiezer's chosen treatment method would not work. *Id.* Dr. Grossman also allegedly stated that because the prison medical staff would not do as he ordered, and because it had taken so long for Plaintiff to be properly evaluated, there was "nothing [he] could do to give [Plaintiff] a normal arm." *Id.*

Plaintiff's final visit with Dr. Hoftiezer described in the complaint occurred on October 17, 2016. *Id.* Plaintiff explained that he was still in pain and that it was getting hard for him to work because of the pain. *Id.* During the period from July 19 to November 2016, Plaintiff alleges he received no physical therapy from prison medical staff. *Id.* Additionally, he says that he was denied effective pain medication until July 2016, when he was prescribed tremedol, which still left him in pain "when moving in certain motions." *Id.*

Plaintiff claims that if he had received the "correct" treatment, his shoulder could have been returned to normal condition. *Id.* Plaintiff's focus appears to be both on the timeliness of treatment and the treatment Dr. Hoftiezer chose. As to the first point, Plaintiff complains that it took sixteen months for him to receive an MRI of his shoulder. *Id.* He further asserts that because he was required to work during this period or face discipline, his shoulder condition worsened and, according to Dr. Grossman, left his shoulder beyond full repair. *Id.* On the issue of the effectiveness of treatment, as noted above, Plaintiff (and allegedly Dr. Grossman) feel that Dr. Hoftiezer's treatment methods were ineffective. *See id.* Plaintiff also contends that Dr. Hoftiezer sent Plaintiff to see specialists because "he didn't know what he was doing." *Id.*

Plaintiff alleges that he has lost most of the movement of his right shoulder due to Dr. Hoftiezer's inadequate treatment. *Id.* at 4. In the only two paragraphs of his complaint devoted to Defendant J. Labelle ("Labelle"), Plaintiff claims that she is the nursing coordinator at the prison and that it is her duty "to correct and to make sure that the doctors at the institution are doing [their] job." *Id.* at 3. He also alleges that she was the reviewing

Page 6 of 12

Case 2:17-cv-00172-JPS   Filed 03/15/17   Page 6 of 12   Document 7

authority for his inmate grievance related to these issues and that, upon reviewing his grievance, she failed to provide him relief from Dr. Hoftiezer's inadequate treatment. *Id.* at 4.

On these facts, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. *Id.* This claim incorporates three components. First is Plaintiff's complaint about the long delay in providing meaningful treatment. *Id.* Second, Plaintiff states that the treatment ultimately provided was deficient. *See id.* Finally, Plaintiff asserts that he was not provided effective pain medication although Defendants knew he was in constant pain for over a year. *Id.*

To state a claim of deliberate indifference to serious medical need, in violation of the Eighth Amendment, Plaintiff must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused the plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Here, the Court finds that under the generous standard of review applicable at screening, Plaintiff sufficiently states a claim for deliberate indifference against Dr. Hoftiezer, who allegedly failed to order the tests necessary to fully evaluate Plaintiff's condition for a long period of time and then, once that was done, disregarded the treatment recommendations of Dr. Grossman, an orthopedic specialist. Additionally, it appears that Plaintiff believes that Dr. Hoftiezer knew that the medication he prescribed was not alleviating Plaintiff's pain. Based on these allegations, the Court will allow Plaintiff to proceed on his claim against Dr. Hoftiezer.

Plaintiff may not proceed, however, against nursing coordinator Labelle. His first theory seems to be that she, as the nursing manager, is responsible for making sure that physicians like Dr. Hoftiezer "do their job." This theory is not cognizable in a Section 1983 action. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Liability may also attach when a government official consents to or turns a blind eye toward another's conduct. *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Because personal involvement is required, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Here, Plaintiff's first theory is that Labelle is responsible for Dr. Hoftiezer's treatment decisions merely because she is his putative supervisor. It must be dismissed.

Plaintiff's second theory as to Labelle is that she, operating as a reviewing authority, disregarded his inmate grievance about his treatment. This theory, too, lacks merit. While a prison official might be liable for ignoring inmate grievances over a period of time which give her notice of an ongoing failure to provide necessary treatment, *see Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015), that is not what occurred here. Attached to Plaintiff's complaint is what appears to be the lone grievance he filed with respect to these issues. (Docket #1-1 at 15–17). The grievance was filed on October 17, 2016, the same day as Plaintiff's last visit with Dr. Hoftiezer. *Id.* The inmate complaint examiner recommended dismissal of the grievance, and Labelle adopted that recommendation on November 4, 2016. *Id.* at 18. There is no allegation that Labelle was aware of Plaintiff's condition and complaints prior to the submission of the October 2016 grievance, and there is very little that Plaintiff alleges occurred after this time. *See* (Docket #1 at 3–4).

Labelle cannot be responsible for failing to intervene as to past errors in Plaintiff's medical care that were not ongoing. *Gayton*, 593 F.3d at 620 (the defendant must first know of the risk, then disregard it, to be liable for deliberate indifference). Put differently, because Labelle, acting as complaint examiner, did not participate in the underlying constitutional violation, she cannot be liable for it. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Montanez v. Feinerman*, 439 F. App'x 545, 547 (7th Cir. 2011). Nor is her mere dismissal of Plaintiff's inmate grievance actionable absent an allegation that she ignored it or failed to investigate it. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). Plaintiff's claim against Labelle must, therefore, be dismissed.

For the reasons stated above, the Court finds that Plaintiff may proceed on the following claim: deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, against Dr. Hoftiezer. 28 U.S.C. § 1915A(b).

Additionally, based on the nature of the claims presented, the Court finds it appropriate to appoint counsel for Plaintiff. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. banc 2007). Because locating willing counsel can take time, the Court will initiate the process of recruiting counsel immediately. If Plaintiff does not wish to be represented by court-appointed counsel in this matter, he should file a notice to the Court indicating as much within fourteen days of the date of this Order.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant J. Labelle be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on Defendant Dr. Hoftiezer;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendant shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order;

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from Plaintiff's prison trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action;

**IT IS FURTHER ORDERED** that if Plaintiff desires not to be represented by court-appointed counsel in this matter, he must file a notice indicating the same no later than fourteen (14) days from the date of this Order;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if Plaintiff is no longer incarcerated any of these institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 15th day of March, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge